STATE OF MAINE                                              SUPERIOR COURT
CUMBERLAND, ss                                             DOCKET NO. CV-26-

**JACOB MICHAUD,**

        Plaintiff,

v.                                                         **COMPLAINT**

**BANGKOK THAI ENTERPRISES, INC.
d//b/a BODA**

        Defendant.

## INTRODUCTION

This is an action for discrimination and retaliation and constructive discharge in violation of Maine and federal law. Plaintiff brings his claims under the Maine Human Rights Act, 5 M.R.S. §4551 et seq., the Maine Whistleblowers' Protection Act, 26 M.R.S. §831 et seq., and analogous federal laws, including Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jacob Michaud ("Plaintiff" or "Mr. Michaud") is a natural person, citizen, and resident of Portland, Cumberland County, State of Maine.

2. Defendant Bangkok Thai Enterprises, Inc. d/b/a Boda (hereinafter "Boda") is a Maine corporation and Thai restaurant with a principal place of business in Portland, Cumberland County, Maine.

3. Venue and jurisdiction are proper in this Court on the grounds that Cumberland County is where Plaintiff lives, where Defendant maintains a principal place of business and where the events giving rise to this Complaint took place.

## FACTUAL ALLEGATIONS

4. Defendant operates Boda, which is a Thai-style restaurant located in Portland, Maine ("Boda").

5. Mr. Michaud is an individual who began employment with Defendant in or around December of 2021 and is currently employed with Defendant.

6. Boda employs more than ten (10) employees.

7. Mr. Michaud works as a server.

8. For more than four (4) years, Mr. Michaud has performed his job satisfactorily.

9. Mr. Michaud has never, not once, been formally reprimanded by Boda.

10. In or around early 2025, Mr. Michaud and other employees began to complain to the owners/managers of Boda, Danai Sriprasert and Nattasak Wongsaichu ("Dan" and "Bob"), and managers Kage Harrigan and Maximillian Clark ("Max"), of various illegal practices, including wage and hour violations that Boda was engaging in.

11. A list of illegal procedures and/or violations that Boda engaged in while Mr. Michaud was employed and complained about as a server includes the following but is not limited to:

     (a)    Tipping managers from the service employees' tip pool, 26 M.R.S. § 664(2-A)(B);

     (b)    Paying non-service staff, such as hostesses, from the tip pool, 26 M.R.S. § 664(2-A)(A);

     (c)    Having service staff work shifts as Hosts/Hostesses for less than minimum wage, 26 M.R.S. 664(1);

     (d)    Changing employees' rate of pay without notice, 26 M.R.S. § 621-A(5);

(e)    Failure to offer or provide appropriate earned paid leave to employees, 26 M.R.S. § 637;

(f)    Failing to post employment policies and laws, including documented paid family and medical leave policies and laws; 26 M.R.S. §§ 42-B and 850-I;

(g)    Failing to offer or provide paid family and medical leave to employees; 26 M.R.S. 850-C;

(h)    Failing to maintain payroll records for the required three-years, 26 M.R.S. § 665;

(i)    Paying certain employees "under the table", *Id.*;

(j)    Employing and housing undocumented workers;

(k)    Permitting unsafe conditions in the workplace, including the knowing sale and service of spoiled food (rice) to the consuming public in order to save costs and natural gas or propane dangers.

(l)    Retaliating against employees for their good faith complaints of illegal practices, 26 M.R.S. § 833.

12.    Defendant maintained a tip pool whereby tips collected from customers were combined to be distributed by Boda to its employees.

13.    For as long as Mr. Michaud has worked at Boda, managers were given a share of the employee's tip pool which was contributed to by all service staff for distribution among themselves.

14.    From 2021 on, the tip pool distributions were made weekly based on the amount of hours each participating employee worked during that week and paid to each by check memorialized in a tip check book register.

15. Managers wrongfully received payouts from the employees' tip pool based on the hours they worked, the same as service employees.

16. Managers also wrongfully received payouts from service charges and the employees' tips for takeout.

17. On information and belief, some employees, were being paid with cash under the table, both as distributions from the tip pool and as direct wages.

18. Defendant's "Employment Guide", purportedly effective on July 9, 2016 through to July 25, 2025, makes zero references to paid leave or tip pooling and, though there are sections listed in its' Table of Contents referencing "5. Employee Benefits" and "7. Timekeeping & Payroll" with subparts, both sections are substantively omitted in the body of the document with no further reference to either and no actual policies annotated.

19. On or around January 12, 2025, Mr. Michaud e-mailed owners Dan and Bob, and manager Kage, and specifically notified them that the managers were receiving compensation from the tip pool and that the practice was illegal.

20. On or around March 17, 2025, a then-co-worker of Mr. Michaud, Ms. Ahlsen met with owners Dan and Bob, and manager Max Clark, personally to discuss several topics, one of which was the illegal distribution of tip pool money to managers from the service employee tip pool.

21. Ms. Ahlsen also complained to owners Dan and Bob, and manager Max Clark, about paid leave policies, and her discomfort with managers.

22. Mr. Michuad and others contemporaneously complained to the Maine Department of Labor.

23.    After receiving complaints from its employees, including Mr. Michaud, Boda continued its illegal practice of paying managers from the employee's tip pool by wrongfully reclassifying the managers or changing their duties.

24.    As a result of his complaints, Mr. Michaud faced backlash and retaliation from his managers because Ms. Michaud was complaining about managers receiving compensation illegally from the tip pool maintained for service employees.

25.    On or around April 17, 2025, and at subsequent times, manager Max Clark threatened the complaining employees, including Mr. Michaud, that if employees pursue recovery of their back wages it will "ruin this restaurant," that "[Boda] will have to shut down and everyone will lose their jobs except for a handful of people because Boda will only be able to do takeout," "only one to three people will be able to keep their jobs in the front of house if [Boda] were to close and do takeout only" and that the attempt will "get [all other employees] fired" and "all the kitchen staff deported because hardly any of them are legal."

26.    Concurrently, Mr. Michaud and other employees filed complaints with the Maine Department of Labor.

27.    Behind the host area and next to the kitchen area at Boda, near the computer and with the schedule, management left out the tip check register, whereby employees could look at and record the tip checks given to themselves and all other employees on a weekly basis.

28.    The tip pool check register resided at that location until the summer of 2025.

29.    In spring of 2025, Ms. Ahlsen photographed the register as it then existed.

30.    On or around June 9, 2025, Ms. Ahlsen was given a written reprimand for photographing the register whereby Boda stated that "[n]on-management employees are not permitted to access private company financial documents such as this." This despite the fact that

no policy in place according to Boda's "Employment Guide" forbade, discouraged, or mentioned such.

31.    As of July 8, 2025, the register no longer resides in the host area. Boda claims to only possess this photographed register which goes back to January of 2025. All registers which existed to show tip payouts prior to January of 2025 have purportedly been destroyed.

32.    Management refused and failed to address Plaintiff's complaints for a period of over 4 months.

33.    Mr. Michaud made good-faith complaints to management regarding the retaliatory treatment and underlying unlawful practices.

34.    Defendant retaliated against Mr. Michaud by not adequately investigating and remediating Plaintiff's complaints and by threatening his conditions of employment.

35.    After Mr. Michaud and others complained of the illegal pooling procedures, the paid time issues, and harassment by management, management further retaliated by suddenly instituting a policy whereby employees came to work to find a notice posted requiring that all employees make themselves available at least one weekend day per week going forward or risk termination. This new policy was putative and designed to cause one or more employees to quit.

36.    On November 5, 2025, Mr. Michaud asked Max Clark about a procedure used to void a mistaken payment to which Mr. Clark responded: "…next time you'll have to cover 50% of the tab." On November 7, 2025, Mr. Clark apologized and stated that "he was only over exaggerating [sic] so that you would be more careful about using my manager number to void things on the fly."

37.    During Mr. Michaud's tenure at Boda his pay has changed multiple times without notice or consent.

38.    Plaintiff filed a timely charge with the Maine Human Rights Commission (MHRC).

39.    On January 30, 2026, the Maine Human Rights Commission issued a Right to Sue Letter.

### COUNT I- WHISTLEBLOWER PROTECTION AND RETALIATION

**(Title VII, 42 U.S.C. §2000e-3(a); Maine Human Rights Act, 5 M.R.S. §4551 *et. seq.*; and Maine Whistleblowers' Protection Act, 26 M.R.S. §833)**

40.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

41.    At all relevant times, Plaintiff, an employee of Defendant, Boda, took actions that are protected under the Whistle Blower Protection Act, 26 M.R.S. § 833.

42.    Plaintiff engaged in protected activity under federal and state law by opposing and reporting conduct she reasonably believed constituted a violations of law both orally and in writing.

43.    Plaintiff made these reports in good faith to management at Boda as well as the Maine Department of Labor and the Maine Human Right's Commission.

44.    Plaintiff's complaints were protected under:

(a) Title VII, 42 U.S.C. §2000e-3(a) (prohibiting retaliation for opposing unlawful employment practices);

(b) Maine Human Rights Act, 5 M.R.S. §4572(1)(E) (prohibiting retaliation against individuals who oppose discrimination); and

(c) Maine Whistleblowers' Protection Act, 26 M.R.S. §833(1)(A)-(C) (protecting employees who report conditions that violate law or endanger health and safety).

45.    Following his protected complaints, Defendant, acting through management, retaliated against Plaintiff by:

(a)    threatening his terms, conditions and/or privileges of employment;

(b)    changing scheduling policies;

(c)    creating and maintaining an intolerably hostile work environment.

46.    Defendant intentionally discriminated and retaliated against Plaintiff for his protected whistleblower activity.

47.    Defendant's unlawful actions caused Plaintiff to suffer inconvenience, substantial physical, mental and emotional pain and suffering, loss of enjoyment in life, substantial economic damages, and loss of past and future earning capacity.

48.    Defendant's retaliatory conduct continued for months.

49.    Defendant's conduct and inaction were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights.

50.    Defendants knew or should have known that this intentional discrimination and retaliation against Plaintiff would result in harm to Plaintiff.

51.    By virtue of the foregoing, Defendant is liable to Plaintiff for violation of Maine's Whistleblower Protection Act, and retaliation, in an amount to be determined together with interest, costs, and attorneys' fees. Plaintiff seeks recovery of all available remedies and all form of damages, including punitive damages.

### COUNT II – PUNITIVE DAMAGES: 5 M.R.S. § 4551, *et. seq.*

52.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

53.    Defendants engaged in discriminatory and retaliatory practices against Plaintiff with malice and/or reckless indifference to the rights of Plaintiff to be free from employment discrimination and retaliation for whistleblower activity.

54.    Defendant's wrongful conduct was so outrageous that malice may be implied.

55.    By virtue of the foregoing, Defendant is liable for punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Enter judgment for Plaintiff on all claims;

(b) Award damages for frontpay, backpay, emotional distress, special damages, compensatory damages, and punitive damages;

(c) Award attorney's fees, expenses, and costs pursuant to 5 M.R.S. §4614; and

(d) Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

DATED at Portland, Maine, this 27th day of March 2026.

Respectfully Submitted,
Jacob Michaud
By counsel,

Jeffrey Bennett, Esq. Bar #7223
Allison McGonagle, Esq. Bar #10763
Legal-Ease, LLC P.A.
Two City Center, 4th Floor
Portland, Maine 04101
T: (207) 805-0055
service@legal-ease.com